IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA, | OPINION AND ORDER |
| Plaintiff, | |
| | 15-cr-56-wmc |
| v. | |
| KRISTOPHER WARREN, | |
| Defendant. | |

Pending before the court for some time is the United States Probation Office's petition to modify the conditions of supervised release to which defendant Kristopher D. Warren is subject following completion of his imprisonment for transportation and possession of child pornography.  In response, defendant takes this opportunity to seek modification and elimination of a variety of conditions he committed to in his written plea agreement.  After a hearing on that petition, at which both United States of America and Kristopher Warren appeared by counsel, and subsequent briefing, the court now finds that the modifications and additional, special conditions appearing at the end of this Opinion and Order are warranted.  In particular, while there is no direct evidence here of Warren having engaged in hands-on offenses, his past criminal conduct included acting as a moderator for a private website group that actively solicited, organized and posted new, disturbing images and videos of child abuse.  This is more than sufficient to defer to the Probation Office's recommendation that the defendant be subject to polygraph testing and periodic, unannounced inspections of his residence at reasonable times and in a reasonable matter, at least for an initial period of his supervision.

## BACKGROUND

### A. Underlying Offensive Conduct

Consistent with the terms of his written plea agreement, defendant Kristopher Warren was adjudged guilty in the Central District of California on two counts: transportation of child pornography in violation of 18 U.S.C. § 2252(a)(2); and possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B).[1]  *United States v. Warren*, Case No. 09-cr-287-svw, dkt. #28 (C.D. Cal. Mar. 11, 2010.)   Both offenses are Class C felonies.[2]

Warren's formal plea agreement contained the following statement of facts agreed upon by the defendant and the United States Attorney's Office as sufficient, although not a complete recitation, to "support pleas of guilty to the charges."

> a) Beginning on or about September 18, 2003 and continuing to on or about October 5, 2003, defendant accessed the internet using a computer and   participated in the Yahoo! Group "FunFotos4all" (a.k.a. "picsfun," "AApicsfun," "AAAA.picsfun," "ABpicsfun," "BAAApicsfun, " "ABCpicsfun," "ajbpicsfun," "ajxpicsfun," "akxp4csfun," "alxpicsfun," "amxpicsfun," "amxspicsfun," "anxpicsfun," "anxspicsfun," "anyspicsfun," "acaspicfun," "aaasics4fun," "aaaaphotos4fun,") by using Yahoo! IDs "BigSexykw" and "alrothvh" to knowingly possess and transport images of actual minors engaged in sexually explicit conduct, including but not limited to the following:
>
> i) On September 18, 2003, defendant posted to the "virglh" album in the group a picture titled "virgin. jpg" which depicts; a prepubescent girl wearing underwear only lying on a bed with her legs spread using one hand

---

[1] Warren's offenses of conviction occurred in 2003, although he was not formally charged until March 26, 2009, and then by information only.   Before sentencing, Warren had been under the supervision of the U.S. Pretrial Services Office for the Central District of California, which included required psychological counseling or psychiatric treatment.   While he incurred no violations during this period, it appears Warren was neither subject to unannounced inspections of his home or computers, nor to polygraph testing.   *Warren*, No. 09-cr-287-svw, dkt. #13.

[2] As noted during the hearing on the probation office's petition, the violation of 18 U.S.C. § 2252(a)(2) was erroneously cited as a Class B felony in the court's previous order dated June 23, 2015.

to pull aside her underwear and expose her genital area;

ii) On September 22, 2003, defendant posted to the "pt" album in the group a picture titled "pt9.jpg" which depicts a prepubescent girl in pigtails wearing only black thigh high pantyhose sitting on a bed with her legs spread open to expose her genital area;

iii) On September 22, 2003, defendant posted to the "in action" album in the group a picture titled "lolitashc.jpg" which depicts a prepubescent girl lying on a bed with her legs spread and an adult male penis penetrating her vagina;

iv) On September 23, 2003, defendant posted to the "ForcedorTieduporCrying" album in the group a picture titled "12yoBondage.jdp" which depicts a minor girl sitting on a floor with her legs spread, ankles and hands tied together, a gag tied inside her mouth and ropes tied from around her neck to the inside of her vagina;

v) On September 24, 2003, defendant posted to the "Bjs" album in the group a picture titled "9yococksuck[l] .jpg" which depicts a prepubescent girl with her mouth open and her tongue out licking semen from an adult male penis;

vi) On September 24, 2003, defendant posted to the "anal9 album in the group a picture titled "analOl.jpg" which depicts a prepubescent minor girl lying naked face down on a bed with a pillow beneath her pelvis and a naked minor boy penetrating her anus from behind;

vii) On September 25, 2003, defendant posted to the "pt" album in the group a picture titled "pt69.jpg" which depicts two young children lying head to toe on a couch engaging in oral sex;

viii) On September 25, 2003, defendant posted to the "pt" album in the group a picture titled "cumcunt.jpg" which depicts a naked minor girl lying on a bed with her legs spread open to expose her genitals which are covered with semen;

ix) On September 25, 2003, defendant posted to the "pt" album in the group a picture titled "bj.jpg" which depicts a prepubescent minor girl performing oral sex on an adult male;

x) On September 29, 2003, defendant posted to the "Bjs" album in the group a picture titled "gx0034cum.jpg" which depicts a prepubescent minor girl leaning over the penis of an adult male with semen dripping from her mouth onto the penis;

xi) On September 30, 2003, defendant posted to the "Candid" album in the group a picture titled "bedpost.jpg" which depicts a naked young minor girl perched just above a bedpost with her legs spread; and

xii) On October 5, 2003, defendant posted to the "ForceorTieduporCrying" album in the group a picture titled "14yo girl-bound and gagged.jpg" which depict a minor girl sitting on a floor naked with her legs spread and her ankles tied together, her thighs tied to her calves on each leg, a red plastic ball in her mouth secured by a black leather

3

band and a rope around her neck that is tied to where her ankles are joined.

    b) The producing of such visual depictions, including but not limited to "bedpost.jpg," "gx0034.cum.jpg," "virgin.jpg," "pt69l.jpg," and "anal01.jpg," involved the use of actual minors engaging in sexually explicit conduct and such visual depictions are of sexually explicit conduct.

*Id.*, dkt. #3:5-8.

In addition, the Presentence Investigation Report prepared by the United States Probation Office for the Central District of California noted Warren's many postings to the Yahoo! Group, indicating his active role in moderating, growing and maintaining that group, including the following:

B.    On September 19, 2003, [Warren] posted a message to the "Admiring pictures" message board in the group with the Subject line "Name and membership change," which read: "I have changed the name, and made this a restricted group in hopes that it stays open longer. Members are now required to send 2 pictures to obtain and keep membership. Thanks."

C.    On September 19, 2003, [Warren] posted a message to the "Admiring pictures" message board in the group with the Subject line "New albums added," which read: "and lots of pies. Please add your own."

D.    On September 22, 2003, [Warren] posted a message to the "Admiring pictures" message board in the group with the Subject line "Please post or be kicked out," which read: "The group has already started to slow down. Lets add some good stuff to the photos and files.  I'll be reviewing memberships at the end of the day. Thanks."

E.    On September 23, 2003, [Warren] posted a message to  the "Admiring pictures" message board in the group with the Subject line "New pics," which read :"I added a ton of pics and regrouped them all so they're easier to find. Please add a photo or two to the 'Add new pic here' folder and I will sort them.'  I think the group looks pretty good right now but we could use some more pics.  I'm rejected any new members who haven't added pics and I'll go through the members who are dead beats later in the week. Post away!!!!"

F.    On September 24, 2003, [Warren] posted a message to the "Admiring pictures" message board in the group with the Subject line "Help-Mandy pics in Action Folder," which read: "Do we have all the pics? Is

there a video?? I just love that girl."

G.      On September 24, 2003, [Warren] posted a message to the "Admiring pictures" message board in the group with the Subject line "Please post," which read: "Any one interested in young braless candid, or web cam hardcore? Please post and I'll start a folder."

E.      On September 25, 2003, [Warren] posted a message to the "Admiring pictures" message board in the group with the Subject line "Lets chat it up," which read: "No one seems to be communicating, or posting pics here. What would people like to see? Lets post."

F.      On September 28, 2003, [Warren] posted a message to the "Admiring pictures" message board in the group with the Subject line "Added a ton, but need some more help on pics," which read: "The photo albums are looking good but we're a little light in some areas. CANDID: Nips showing through shirts, swimsuits, or bras, or any personal ones, or stuff that hasn't made the rounds and is of the right age, lets add them to our collection. FORCEDORTIEDUPORCRYING: Anyone have some good young stuff. We don't have many crying pics yet. Any pics you want to add to the ADDNEWPICS folder would be appreciated. GOOD WORK EVERYONE, Your moderator."

G.      On September 28, 2003, [Warren] posted a message to the "Admiring pictures" message board in the group with the Subject line "Virgin pics," which read: "I forgot one photo album that is really weak, VIRGINS. People have been sending me a lot of requests so please send in your pics. Anything with unbroken hymens, or popping a cherry for the first time is good. Nothing will be rejected."

H.      On September 30, 2003, [Warren] posted a message to the "Admiring pictures" message board in the group with the Subject line "New Group," which read: "Real High school girls age 14-17. No pictures that have made their way around the internet. The pics must be very sexy and will be deleted if they are not. Send a few to join."

I.      On October 7, 2003, [Warren] posted a message to the "Admiring pictures" message board in the group with the Subject line "Added a lot of pics," which read: "and moved some around from the new albums into the categorized albums.   Let's keep posting."

*Id.*, dkt. #3:15-17.[3]

## B. Imposition of Sentence and Conditions of Release

On March 11, 2010, the Honorable Stephen V. Wilson imposed 60-month terms of imprisonment on each count of conviction, to run concurrently, with concurrent 15-year terms of supervised release to follow.   The parties' written plea agreement contains a detailed recitation of conditions of supervised release to which the defendant agrees to be subject and to waive appeal if "imposed by the court," including all conditions set forth in that court's General Orders and, among others, the following special condition:

> . . .
>
> e.      The defendant shall participate in a psychological counseling and/or psychiatric treatment and/or a sex offender treatment program, which may include inpatient treatment, as approved and directed by the Probation Officer.  **The defendant shall abide by all rules, requirements, and conditions of such program, including submission to risk assessment evaluations and physiological testing, such as polygraph and Abel testing.**  The Probation Officer shall disclose the presentence report and/or any previous mental health evaluations or reports to the treatment provider;

*Id.*, dkt. #3:21 (emphasis added).

Nevertheless, in the actual Judgment of Conviction, the conditions of release omit this bolded language from the special condition, requiring only that the defendant "participate in a psychological counseling or psychiatric treatment or a sex offender treatment program as approved and directed by the Probation Officer," leaving out even the language requiring that the defendant to "abide by all rules, requirements, and

---

[3] As reflected in the citation above, these same paragraphs are contained in the parties' written plea agreement, listing conduct for which the defendant could not again be prosecuted.  *Warren*, No. 09-cr-287-svw, dkt. #30.

conditions of such program."   Unfortunately, the record is devoid of any explanation for Judge Wilson's apparent decision to omit this specific language, or indeed for imposing any of the other 16 standard conditions and 8 special conditions of supervised release.[4]

On August 23, 2010, Warren voluntarily surrendered to the Federal Correctional Instution (FCI) in Elkton, Ohio, for service of sentence.   He was then transferred to allow him to participate in programming offered at FCI-Milan, Michigan.   While housed at Milan, he requested relocation of his supervision to the Western District of Wisconsin pursuant to 18 U.S.C. § 3624.   His proposed release plan was later approved, and he received a prerelease placement at a residential reentry center in Janesville, Wisconsin, where he made a positive adjustment.   On December 29, 2014, his concurrent terms of conditional release commenced under the supervision of the U.S. Probation Office for the Western District of Wisconsin.

---

[4] The government implicitly suggests, and there is some reason to believe, that the requirement of submission to polygraph testing is among those things that the defendant agreed to as part of the programs "approved and directed by the Probation Officer," as contemplated by the first sentence in the block quote above.   Again, however, this is not something plainly reflected in the record, even though Ninth Circuit case law would uphold the imposition of polygraph testing in sex offender cases, at least in appropriate circumstances.   *See United States v. Stoteran*, 524 F.3d 988, 1003-34 (9th Cir. 2008) ("A district court may require, as a term of supervised release, that a defendant submit to polygraph testing, provided such a condition comports with the requirements of § 3583(d), but a defendant retains his Fifth Amendment rights during any such testing.") (citations omitted); *see also United States v. McGuire*, 601 Fed. Appx. 554 (9th Cir. 2015) (remanding to district court to consider whether the polygraph condition was required to determine the need for sexual deviancy treatment, and noting that if not, then the condition was improper).   Regardless, the defendant certainly retains the right to seek modification of any term of release in the district court ultimately charged with supervision, as does the U.S. Probation Office, notwithstanding his expressed waiver of the right to appeal the imposition of those conditions in his plea agreement.   *See United States v. Sines*, 303 F.3d 793, 799 (7th Cir. 2002) (distinguishing the right to seek modification of supervised release under Fed. R. Crim. P. 32.1 from an appeal of a condition).

## C. Petition to Modify Conditions of Supervision

In January 2015, Probation Officer Jelani Brown met with Warren to review the court-ordered conditions of supervised release imposed in the Central District of California. At that time, Officer Brown and Mr. Warren began a dialogue regarding his possible consent to modify the terms and conditions of his supervised release. Among other things, Officer Brown sought a specific condition that addressed polygraph testing in conjunction with sex offender treatment, as well as a condition restricting unsupervised contact with minors. Unfortunately, Brown, Warren and his legal counsel were unable to agree on this condition, as well as other proposed modifications.

Following the formal transfer of jurisdiction of this case from the Central District of California to the Western District of Wisconsin on April 22, 2015, therefore, Officer Brown filed a petition with this court to review and impose all of the conditions that he believed appropriate for Warren's ongoing supervision for reasons set forth in that petition. Both parties were provided notice of those proposed conditions on May 20, 2015. A judicial review hearing on the Probation Office's petition was held on June 23, 2015. The court then ordered that the proceedings be held in abeyance until the parties had further opportunity to submit briefings as to the remaining, disputed conditions, which was completed on July 7, 2015.

For the most part, the parties are in agreement as to the conditions that should be imposed. Nevertheless, for completeness, the court will set forth the specific conditions, and why they are being imposed, while also addressing in more detail those conditions that remain in dispute, particularly as to requiring home inspections and periodic

polygraph testing.

## OPINION

In *United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015), the Seventh Circuit Court of Appeals referenced the four general principles a district court should consider in crafting appropriate conditions for release.[5]   The first principle is to provide advance notice of the conditions being considered.   This was satisfied here by the U.S. Probation Office's filing of the petition on May 20, 2015.   The "standard conditions" and "special conditions" were also presented with references to applicable federal statutes and sentencing guidelines.   The second principle is the need to justify the conditions and the length of a term of supervision at sentencing through an adequate statement of reasons, which must be reasonably related to the applicable factors set forth at 18 U.S.C. § 3553(a).   This, too, is provided in the petition and revisited by the court again below. The third principle is to impose specific, appropriately-tailored conditions, which the court also does below.

This just leaves the fourth principle, which is to pronounce all non-mandatory conditions orally, to be followed by a written judgment clarifying the court's oral

---

[5] There is little guidance in case law as to what deference a supervising court should give to the conditions imposed (or not imposed) by the original sentencing court, particularly where that court provides no explanation for doing so.  Nor do the parties provide any.  After *Thompson*, a sentencing court's failure to justify special conditions would likely be grounds for resentencing in the Seventh Circuit, which would suggest limited deference is due, especially when the court departed from the parties' detailed, written conditions without explanation.   In combination with the fact that U.S. Probation Offices have, at least in the past, varied their practices from formally imposed conditions at the time of sentencings, the court nevertheless reviews the imposition of conditions of release with deference, at least to the extent they were imposed as part of Judge Wilson's overall sentence.

pronouncement.   As to the latter, this is typically satisfied at the imposition of the original sentence, and presumably this, too, was done by Judge Wilson (or at least has not been challenged here).[6]

## I.   Mandatory Terms Of Supervised Release

Warren's convictions trigger the provisions of 18 U.S.C. § 3583(k), requiring the court to impose supervised release.   Both counts of conviction in this case carry a mandatory minimum of five years' supervised release.   The sentencing court imposed concurrent, 15-year terms of supervised release.   While the statement of reasons, dated March 11, 2010, is silent as to the justification for those conditions, I find that concurrent, 15-year terms of supervised release are warranted based on the nature of the offense, which included Warren's role as an organizer, moderator and recruiter for a website group that was expressly dedicated, at least in part, to posting disturbing graphic images of child pornography, both prepubescent and pubescent.

Despite Warren's suggestions to the contrary, he did not merely possess child pornography for his own gratification.   He was actively involved in the solicitation, possession, distribution, and receipt of images to his website that involved the sexual exploitation of children, including most disturbingly images that were not available on other websites.   Concurrent 15-year terms of supervised release are reasonable and no

---

[6] Although there appears to be no transcript of Judge Wilson's sentencing hearing, something that could be remedied, there would seem little need to go back given this court's obligation to decide the U.S. Probation Office's pending petition for modification in any event.   Moreover, while this court has already conducted an in-person hearing on the modifications and considered post-hearing briefs, it is certainly willing to provide the defendant with another hearing to include a verbatim recitation of the conditions imposed in this order and the court's reasons for doing so, should he so wish.

greater than necessary under these circumstances to (1) protect the public, (2) promote rehabilitation, and (3) achieve parity with terms of supervised release imposed in the cases of similarly situated defendants sentenced in the Western District of Wisconsin.

## II. Non-Mandatory Conditions of Supervised Release

Consistent with its general obligation to consider the non-mandatory conditions proposed in this case, this court has not only considered the statutory purposes of sentencing set forth at 18 U.S.C. § 3553(a), but also the statutory duty of Probation Officers, 18 U.S.C. § 3603, and guidance from the Criminal Law Committee and the Judicial Conference.   In addition, the court has looked to recent case law and studies of those convicted of possession and distribution of child pornography with respect to the disputed conditions as set forth below.

### A.    Standard Conditions

The parties did not raise objections to proposed "Standard Conditions" numbers 2, 3, 4, 9 and 10 as set forth in the Probation Office's petition.  These conditions are, therefore, adopted for the reasons amply set forth in the petition itself.  The court also agrees with the parties that "Standard Conditions" numbers 5 and 6 do not apply in this case, because there is no indication that the defendant has a history of substance use.

As for the remaining, contested "Standard Conditions," even though each was expressly adopted in the defendant's original plea agreement *and* imposed by Judge Wilson, the court nevertheless makes the following, additional rulings:

- "Standard Condition No. 1" – Defendant shall not leave the judicial district in which defendant is being supervised without the permission of the court

or probation officer.

As did Judge Wilson, I find this condition is warranted, at least initially, because it is related to tracking and controlling defendant, given the nature of his offenses of conviction for child sex offenses, as well as the history and characteristics of defendant, who is a relatively wealthy businessman, capable of traveling out of the judicial district without notice, approval or tracking by the Probation Officer.  Restricting some of the defendant's movements also serves as a general and specific deterrent, and it serves to protect the public.  Probation officers have a statutory duty to keep informed of a defendant's location, conduct, condition and compliance as set forth at 18 U.S.C. § 3603.  That is something more easily accomplished within a district in which the officer is familiar *and* has unquestioned jurisdiction.  Indeed, several judicial districts require advance written notice for sex offenders who propose travel into their districts.

The Probation Officer should not, of course, withhold permission to a reasonable request to travel outside the district.  In particular, should the Officer develop a comfort level with respect to defendant's regular travel activities, or should the defendant find the restriction too cumbersome in practice, the court would certainly consider another petition for modification of this condition to require notification only or to expand the area for which no specific approval is necessary.  Hopefully, the defendant and Probation Officer can come to some agreement and petition the court jointly.

- "Standard Condition No. 7" – Defendant shall not meet, communicate, or spend time with any persons defendant knows to be engaged in criminal activity or planning to engage in criminal activity.

This condition is directly related to the offenses of conviction.  The defendant

helped found and moderated a group whose common objective involved engaging in the criminal sexual exploitation of minors.   The condition also serves as a deterrent and protects the public.   Finally, it promotes rehabilitation.   *See United States v. Kappes*, 782 F.3d 830 (7th Cir. 2015).

- "Standard Condition No. 8" – Defendant shall permit a probation officer to visit defendant at home, work, or elsewhere at any reasonable time and shall permit confiscation of any contraband observed in plain view by the probation officer.

This condition is also related to the offenses of conviction, which were committed by the defendant from the privacy of his home using seemingly anonymous websites. While the defendant is understandably concerned that this might be disruptive, particularly during business meetings, the condition obviously serves as a deterrent for that very reason.   It also serves to protect the public.   *United States v. Armour*, 804 F.3d 859, 890 (7th Cir. 2015).   As previously noted, probation officers have a statutory duty to keep informed of defendants' location, conduct, condition and compliance as set forth at 18 U.S.C. § 3603, all of which override defendants' limited Fourth Amendment rights given the nature of his past crimes.   *Id*. (quoting *Sines*, 303 F.3d at 801 ("A court may impose conditions of supervised release which implicate fundamental rights so long as those conditions are reasonably related to the ends of rehabilitation and the protection of the public from recidivism.")

Again, should it become apparent that the Probation Officer is abusing this right by making repeated, unannounced visits, or is truly and unnecessarily disrupting defendant's legitimate business activities, to the extent he could not reasonably do so elsewhere, he is, of course, free to petition the court himself for modification of this

condition.   However, in the court's experience, the probation officers in this district are quite circumspect as to the reasonable time and manner of unannounced visits to a defendant's home, and if anything, are more than willing to work with someone under their supervision to avoid unnecessary disruptions.   The court will not assume at the outset that defendant's supervision will be any different, notwithstanding his assertion that he is unlikely to have child pornography lying around in plain view, but rather in a computer for which defendant has access under other conditions of supervision.[7]

- "Standard Condition No. 11" – As directed by the probation officer, defendant shall notify third parties of risks that may be occasioned by defendant's criminal record or personal history or characteristics.   The probation officer may also take steps to confirm defendant's compliance with this notification requirement or provide such notifications directly to third parties.

Again, this condition is directly related to the offenses of conviction, thereby serving as a deterrent and protecting the public.   The victims here were minors.   The images of child pornography that the defendant solicited, collected, organized and offered to others depicted the sexual abuse of minors.   Even if inadvertently, which seems unlikely given the defendant's intelligence, he encouraged the creation and distribution of *new and unique* images, fostering new victims.   In defendant's Response to Probation's Petition Regarding Conditions (dkt. #7), dated June 22, 2015, the defendant himself acknowledges that "he had contributed to 'an appalling, destructive, despicable' system." Not only is an on-going risk assessment necessary in his case, it must include the ability to provide reasonable notice to others who may be vulnerable to his manipulation.

---

[7] Among other things, Warren ignores that use of an undisclosed computer device or child contact are among the things an unscheduled home visit may reveal.

Having said that, defendant rightly points out the broad language of Standard Condition No. 11 -- although it was he who originally committed to it as a part of his plea agreement and it is even more concerning that the defendant does not himself offer more reasonable, limiting language, especially in light of the importance of his recognizing the possible risks that a relapse may pose to others, particularly young girls. For example, within reason, the defendant could be required, and the Probation Officer should be authorized, to notify third parties who may unwittingly give him unsupervised access to their computer, pornographic images of children, or young or vulnerable girls that might, at least as suggested by certain of the defendant's past offenses, be triggers for his again viewing, distributing or, worst case scenario, again encouraging the creation of child pornography.

Based on these considerations, the court will modify Condition No. 11 as follows:

> *As directed by the probation officer, defendant shall notify third parties of risks that may be occasioned by defendant's past involvement in the soliciting, distributing and encouraging the creation of child pornography online.*

The second sentence of condition no. 11 will remain the same.

To the extent that this modification continues to cause him uncertainty, the defendant's remedies are many. First, he should attempt to come to a clear understanding with his supervising Probation Officer as to the circumstances in which notice might be appropriate. Second, he should use his own common sense, given his potential for, and the risks of, relapse. Third, he can always seek further guidance from this court or, in the unlikely event that a violation of this condition should be brought to the court's attention, argue that its application was unreasonable under the specific

circumstances presented.

## B.     Special Conditions

Given that the parties did not raise objections to proposed "Special Conditions" numbers 3, 6 and 8 in the Probation Office's petition, and the petition provides ample justification for their imposition here, the court adopts these conditions verbatim as well.

With respect to the contested "Special Conditions," the court makes the following rulings:

- "Special Condition No. 1" – Defendant shall submit his person, property, house, residence, papers, vehicle, or office to a search conducted by a U.S. probation officer at a reasonable time and in a reasonable manner, whenever the probation officer has reasonable suspicion of contraband or the violation of a condition of supervised release; failure to submit to a search may be a ground for revocation; defendant shall warn any other residents that the premises he is occupying may be subject to searches pursuant to this condition.

Notwithstanding the defendant's description of Special Condition No. 1 as "scandalously broad," probation officers are routinely allowed to conduct searches "upon reasonable suspicion," provided it is done "at a reasonable time and in a reasonable manner."  Not only is this appropriate to uncover and deter further criminal behavior, but is recognized as part of the punishment for past criminal convictions, including distribution and possession of child pornography.  *See United States v. Knights*, 534 U.S. 112, 119 (2001).  As for the overreach objection, the court again agrees to the extent that the nature of "contraband" is not defined.  Accordingly, the first proposed special condition is modified to read as follows:

Defendant shall submit his person, property, house, residence, papers, vehicle, or office to a search conducted by a U.S. probation officer at a reasonable time and in a reasonable manner, whenever the probation officer

16

has reasonable suspicion of *the defendant's unauthorized contact with underage children, child pornography, access to the internet, or the solicitation, distribution or creation of child pornography, or the violation of a condition of release;*" failure to submit to a search may be grounds for revocation; defendant shall warn any other residents that the premises he is occupying may be subject to searches pursuant to this condition.

- "Special Condition No. 2" – Defendant shall provide the supervising U.S. probation officer advance notification of any devices associated with or falling within the general category of information technology (IT) that produce, manipulate, store, communicate or disseminate information and that he will use during the term of supervision.  The probation office is authorized to install any application as necessary on any such devices owned or operated by defendant and shall randomly monitor those media.  Defendant shall consent to and cooperate with unannounced examinations of any technological equipment owned or used by him, including but not limited to retrieval and copying of all data from all information technology devices and any internal or external peripherals, when reasonable suspicion exists.  The examinations may involve removal of such equipment for the purpose of conducting examination.

Special Conditions No. 2 is closely related to No. 1, although defendant's objection to the second proposed condition is curious given his repeatedly assertion that its requirements rendered Special Condition No. 1 unnecessary.   Nevertheless, the defendant objects to the probation officer having "the power to rummage through every file on the defendant's computer, to read through every single document -- without exception -- for (any potential infractions) he might find documented there."   While the court finds this language hyperbolic, the underlying concern is a fair one and can be addressed by more clearly defining the purposes for which the probation office may search the defendant's electronic devices.

Accordingly, the court adopts defendant's suggested changes to Special Condition No. 2 as follows:

*Defendant shall provide the supervising U.S. probation officer advance notification of any devices associated with or falling within the general category of information*

17

*technology (IT) that produce, manipulate, store, communicate or disseminate information and that he will use during his term of supervision. The probation office is authorized to install any application as necessary on any such devices owned or operated by defendant and shall randomly monitor those media for the purpose of identifying potential child pornography, evidence of soliciting or fostering child pornography or evidence of promoting, facilitating or engaging in child exploitation. Defendant shall consent to and cooperate with unannounced examinations of any technological equipment owned or used by him for this purpose, including but not limited to retrieval and copying of all data from all information technology devices and any internal or external peripherals. However, the probation office may conduct a detailed examination of any individual data file only if it reasonably suspects that the file may contain evidence of child pornography or child exploitation. Further, the examinations may involve removal of IT equipment for the purpose of conducting an examination only if the probation office reasonably suspects that the device contains evidence of child pornography or child exploitation.*

- "Special Condition No. 4" – Not associate with any person under the age of 18 or have verbal, written telephonic or electronic communication with any such person, except with the express permission of the minor's parent or legal guardian and the supervising U.S. probation officer. This provision does not include persons under the age of 18, such as waiters, cashiers, ticket vendors, etc., with whom defendant must deal in order to obtain ordinary and usual commercial services.

- "Special Condition No. 5" – Not work in any occupation, business or profession, or participate in any volunteer activity where he has access to children under the age of 18 without the prior approval of the supervising U.S. probation officer.

The defendant's objection to Special Conditions Nos. 4 and 5 harken back to his efforts to describe "the atmospherics" of his crime as simple possession of child pornography. In this regard, the court agrees with the government that there is sufficient additional, disturbing conduct surrounding the defendant's crime here to include conditions that will prevent an ongoing risk to the public. In particular, the court agrees that the defendant's past, criminal efforts to solicit new, specific kinds of child pornography give rise to a substantial risk of his promoting the creation of new pornography, or at least requires (contrary to defendant's assertion) no "big leap of logic."

18

Nor is the court willing to discount the possibility that the defendant's past perusal of "instructional" websites about drugging women, coupled with images found on the defendant's camera of apparently asleep or unconscious women with breasts and genitals exposed, suggests related risks, rendering reasonable the Probation Office's request for restrictions on the defendant's association with and access to children under the age of 18 without prior approval of his supervising U.S. Probation Officer. Moreover, in the court's experience, the Probation Office has freely extended permission for associations and access where reasonable safeguards can be put in place.

While the defendant posits a parade of horribles as to unnecessary restrictions, as well as necessary or inadvertent contact with children, that would place him in violation of these special conditions, the court is confident in the Probation Officer's reasonable application of these conditions. Again, were this not the case, the ultimate arbitrator of the application of these conditions, and indeed their modification, is this court. Accordingly, the court believes these restrictions are appropriate, at least in the near term.

- "Special Condition No. 7" – Undergo a psychosexual evaluation, which may involve use of polygraph examinations, as approved by the supervising U.S. probation officer. Defendant shall participate in an outpatient sex offender counseling program if recommended by the evaluator, which may involve the continued use of polygraph examinations, as approved by the supervising U.S. probation officer. Defendant's answers to questions by the treatment provider, probation officer and polygraph examiner shall be truthful in all respects unless a fully truthful statement would tend to incriminate defendant, in violation of defendant's constitutional rights, in which case defendant has the right to remain silent. Defendant shall follow all restrictions and treatment requirements of the program. If defendant is eligible for funding from any source to cover the cost of treatment, defendant is to make reasonable efforts to obtain such funding.

Participation in treatment does not require payment by defendant unless it is clear defendant can afford it. Defendant shall allow reciprocal release of information between the supervising U.S. probation officer and the treatment provider.

Finally, the court turns to the most hotly contested provision of defendant's proposed conditions of release. Notwithstanding defendant's strong objection, the Seventh Circuit has approved polygraph tests as a condition of supervised release, and in particular as part of sex offender treatment. *Kappes*, 782 F.3d at 856.[8] Indeed, the Seventh Circuit has noted that polygraph testing is "not unusual," as an alternative to other, more intrusive testing, such as plethysmorgraph testing. *See Untied States v. Rhodes*, 552 F.3d 664, 628 (7th Cir. 2009). The court has found polygraph testing particularly appropriate for defendants who resist "honest self-assessment" or have not been candid with the court. *United States v. Brewster*, No. 14-1285, 2015 WL 7295176, at *3, *4 (7th Cir. Nov. 19, 2015) (finding that district court was justified in imposing polygraph examination as condition of release where defendant claimed that he was a good father despite video evidence of him molesting his daughter).

---

[8] The Seventh Circuit is hardly alone in this. Indeed, it appears that every circuit to address it has upheld polygraph testing as a condition of supervised release, at least where the circumstances warrant. *United States v. York*, 357 F.3d 14, 22-23 (1st Cir. 2004); *United States v. Johnson*, 446 F.3d 272, 277-78 (2d Cir. 2006); *United States v. Lee*, 315 F.3d 206, 215 (3d Cir. 2003) (noting that polygraph testing is a tool used to assist probation in supervision, and so the "questioning should be limited to that which relates to the supervision, monitoring, and treatment of the appellant"); *United States v. Dotson*, 324 F.3d 256, 261 (4th Cir. 2003); *United States v. Locke*, 482 F.3d 764, 767-68 (5th Cir. 2007); *United States v. Teeple*, 447 Fed. Appx. 712, 713 (6th Cir. 2012) (unpubl.); *United States v. Wiedower*, 634 F.3d 490, 493-94 (8th Cir. 2011) (approving polygraph testing condition, noting that district court indicated that the offender was not being candid about the nature of his offenses); *United States v. Weber*, 451 F.3d 552, 568 (9th Cir. 2006); *United States v. Begay*, 631 F.3d 1168, 1174-75 (2011) (concluding that polygraph condition was not improper because the testing could encourage the defendant to be truthful with his probation officer and alert the probation office to any potential problems with the supervision, while doubting the usefulness of polygraph testing as a supervision tool); *United States v. Taylor*, 338

While polygraph testing is routinely permitted, courts are encouraged to explain carefully the function of the testing, and as relevant, the relationship between the testing and a sex offender treatment program.[9]  *See United States v. Siegel*, 753 F.3d 705, 713 (7th Cir. 2014).   And with respect to the latter purpose, only the treatment provider, not the probation office, may select the type, manner and amount of testing.  *Kappes*, 782 F.3d at 856.   Yet once the district court imposes a condition requiring a defendant to participate in a sex offender treatment program, the court "may delegate to the probation office details regarding the selection and schedule of a sex offender treatment program." *United States v. Sines*, 303 F.3d 793, 799 (7th Cir. 2002).   As a result, although the probation office does not determine exactly how the polygraph test is administered, the Seventh Circuit has permitted conditions that require the approval of the polygraph test by a probation officer.  *See Rhodes*, 552 F.3d at 628.

This is not to ignore the intrusive nature or questionable value of polygraph testing.   Indeed, continuing questions as to its reliability has generally resulted in its exclusion as evidence.  *See United States v. Scheffer*, 523 U.S. 303, 309-10 (1997) (overly prejudicial nature of polygraph testing in light of the questionable probative value of any results); *United States v. Lea*, 249 F.3d 632, 639-40 (7th Cir. 2001) (same).   Much of

---

F.3d 1280, 1283-84 (11th Cir. 2003).

[9] The three types of polygraph testing are generally administered to sex offenders as a condition of supervised release:   (1) the full disclosure or sexual history examination, which takes place in the first three to six months of treatment and where the offender provides the entirety of his sexual history; (2) specific issue examination, where the evaluator focuses on an allegation or behavior, or where an offender is in denial about committing the crime of conviction; and (3) maintenance or monitoring examination, the purpose of which is to verify the offender's compliance with treatment and supervision conditions, and are administered on a periodic basis, usually every six months.   Leilah Gilligan & Tom Talbot, *Community Supervision of the Sex Offender: An Overview of Current and Promising Practices*, CENTER FOR SEX OFFENDER MANAGEMENT

that concern is ameliorated by the fact that the Probation Office can only use the results of polygraph testing to support treatment or as a tool for supervision. Moreover, a defendant on supervised release may invoke his Fifth Amendment rights not to answer questions. *Kappes*, 782 F.3d at 855-56.

Furthermore, a number of studies show that polygraph testing assists in promoting public safety, one of the factors for consideration under § 3553(a), by revealing additional, previously unknown, behaviors that were either violations of conditions of release or other "high-risk" behavior. For instance, a study published in 2004 revealed that polygraph testing increased material disclosures to providers and probation officers. *See* Don Grubin, *et al.*, *A Prospective Study of the Impact of Polygraphy on High-Risk Behaviors in Adult Sex Offenders*, SEXUAL ABUSE:   A JOURNAL OF RESEARCH AND TREATMENT 209-22 (July 2004). The Grubin study also "concluded that polygraph testing resulted in offenders engaging in less high-risk behavior, although the possibility that offenders fabricated reports of high-risk behaviors to satisfy examiners is also considered; similarly, offenders seemed to be more honest with their supervisors." *Id.* at 16(3). Similarly, a study of sexual offenders in the Southern District of Iowa recently found that 69% of individuals revealed during polygraph examinations additional contact sexual offenses. Matt DeLisi, *et al.*, *The Dark Figure of Sexual Offending:   New Evidence from Federal Sex Offenders,* JOURNAL OF CRIMINAL PSYCHOLOGY (2016 forthcoming). They conclude, as a result of this study, that polygraph examinations of the sexual histories of sex offenders should be used in the interest of public safety.

---

(Jan. 2000).

In 2014, in another published study, which consisted of a sample of 127 individuals with a conviction for possession of child pornography, but no known history of hands-on offenses, 4.7% admitted to sexually abusing at least one child. Yet when a polygraph examination was conducted, "an additional 52.8% of the study sample provided disclosures about hands-on abuse." Michael L. Bourke, Lance Fragomeli, Paul Detar, Michael Sullivan, Edward Meyle & Mark O'Riordan, *The Use of Tactical Polygraph with Sex Offenders*, 21(3) JOURNAL OF SEXUAL AGGRESSION 354 (Feb. 2014). As a result, the authors of this study not only agreed that post-conviction polygraph testing is effective in obtaining more accurate information about sexual offenders' past behavior, but concluded that the use of the polygraph "is viewed as consistent with best practices." *Id*.

Taking into consideration the current state of the law in this Circuit and nationwide, the recent, admittedly preliminary studies concerning the possible value of these tests, and the defendant's troubling history, the court will defer to the Probation Office's recommendation that the defendant be required to sit for polygraph examinations, whether to obtain a more complete sexual history, help the defendant to confront the full context of his crime of conviction or to monitor his ongoing compliance with treatment and supervised release conditions. Indeed, there is more than enough in this record to suggest that defendant has yet to disclose the full scope of his past sexual misconduct, is in denial about the full scope of his criminal conduct here and has given his Probation Officer pause about his ongoing conduct. While the court does not expect such testing to be some panacea for the defendant's self-awareness, treatment or

management, the Probation Officer has demonstrated ample reason to allow them to implement polygraph tests.   Accordingly, the court will impose Special Condition #7 subject to review every three (3) years unless either party or the Probation Office should petition for review at another time.

ORDER

IT IS ORDERED that:

1.      The period of supervised release imposed on the defendant on March 10, 2010, is CONTINUED with the following conditions to apply for the reasons set forth above and further justified below:

STANDARD CONDITIONS OF SUPERVISION   JUSTIFICATION

| | | |
|---|---|---|
| 1) | **Defendant shall not leave the judicial district in which defendant is being supervised without the permission of the court or probation officer.** | To provide community protection, rehabilitation for defendant, and to enable the supervising probation officer's statutory duty to keep informed of defendant's location, conduct, condition, and compliance. 18 U.S.C. § 3553(a)(1), (a)(2)(B) and (C); 18 U.S.C. § 3563(b)(14); 18 U.S.C. § 3603(2) and (7); USSG §5B1.3(b)(1)(A), (C), (D) and (b)(2); USSG §5D1.3(b)(1)(A), (B), (C) and (b)(2). |
| 2) | **Defendant is to report to the probation office as directed by the Court or probation officer and shall submit a complete written report within the first five days of each month, answer inquiries by the probation officer, and follow the officer's instructions.     The monthly report and the answer to inquiries shall be truthful in all respects unless a fully truthful statement would tend to incriminate defendant, in violation of defendant's constitutional rights, in which case defendant has the right to remain silent.** | To provide community protection, rehabilitation for defendant, to ensure officer and defendant safety, and to enable the supervising probation officer's statutory duty to keep informed of defendant's location, conduct, condition, and compliance. 18 U.S.C. § 3553(a)(1), (a)(2)(B), (C) and (D); 18 U.S.C. § 3563(b)(15) and (17); 18 U.S.C. § 3603(2), (3), (4) and (7); USSG §5B1.3(b)(1)(B)(C), (D), (E) and (b)(2); USSG §5D1.3(b)(1)(B), (C), (D) and (b)(2). |
| 3) | **Defendant shall maintain lawful employment, seek lawful employment, or enroll and participate in a course of study or vocational training that will equip defendant for suitable employment, unless excused by the probation** | Evidence based practice research indicates that lawful, stable employment and education are pro-social activities that reinforce the rehabilitation of defendant. Employment and education have been identified as risk factors |

| | | |
|---|---|---|
| | officer or the Court. | for recidivism.   18 U.S.C. § 3553(a)(2)(B), (C) and (D); 18 U.S.C. § 3563(b)(4) and (5); 18 U.S.C. § 3603(2), (3), (4) and (7); USSG §5B1.3(b)(1)(C),   (D)   and   (E);   USSG §5D1.3(b)(1)(B), (C) and (D). |
| 4) | **Defendant shall notify the probation officer within seventy-two hours of any change in residence, employer, or any change in job classification.** | To   provide   community   protection, rehabilitation for defendant, to ensure officer and defendant safety, and to enable the supervising probation officer's statutory duty to keep informed of defendant's location, conduct, condition, and compliance. 18 U.S.C. § 3553(a)(2)(C); 18 U.S.C. § 3563(b)(13), (15), (16) and (19); 18 U.S.C. § 3603(2), (3), (4) and (7); USSG §5B1.3(b)(1)(D) and (b)(2); USSG §5D1.3(b)(1)(C). |
| 5) | **Defendant shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician.** | Evidence based practice research indicates the use of illicit chemicals is a risk factor for recidivism.   This condition is recommended to   assist   with   defendant's   rehabilitation, officer and defendant safety, and to protect the public.   18 U.S.C. § 3553(a)(1), (a)(2)(A), (B) and (C); 18 U.S.C. § 3563(b)(7); 18 U.S.C. § 3603(3); USSG §5B1.3(b)(1)(A), (B), (C) and (D); USSG §5D1.3(b)(1)(A), (B) and (C). |
| 6) | **Defendant shall not visit places where defendant knows or has reason to believe controlled substances are illegally sold, used, distributed, or administered.** | Evidence based practice research indicates that frequenting places where illicit chemicals are sold,   used,   distributed   or   administered increases the risk that defendant will purchase, use or possess illicit chemicals.   Individuals involved in the distribution of illicit chemicals present a risk of peer association as identified in the research.   This condition supports rehabilitation of   defendant   and   promotes public   safety.   18   U.S.C.   §   3553(a)(1), (a)(2)(B) and (C); 18 U.S.C. § 3563(b)(6); 18 U.S.C.   §   3603(3);   USSG   §5B1.3(b)(1)(A), (B),   (C),   (D)   and   (b)(2);   USSG §5D1.3(b)(1)(A), (B) and (C). |
| 7) | **Defendant shall not meet, communicate, or spend time with any persons defendant knows to be engaged in criminal activity or planning to engage in criminal activity.** | Evidence based practice research indicates that association with peers involved in criminal activity increases the risk of recidivism. This condition promotes and encourages pro-social relationships   that   are   conducive   to   a law-abiding lifestyle.   18 U.S.C. § 3553(a)(1), |

| | | |
|---|---|---|
| | | (a)(2)(A), (B) and (C); 18 U.S.C. § 3563(b)(6); 18 U.S.C. § 3603(3); USSG §5B1.3(b)(1)(B), (C) and (D); USSG §5D1.3(b)(1)(B) and (C). |
| 8) | **Defendant shall permit a probation officer to visit defendant at home, work, or elsewhere at any reasonable time and shall permit confiscation of any contraband observed in plain view by the probation officer.** | Community contacts ensure compliance with court-ordered conditions and assist defendant in maintaining a law-abiding lifestyle. 18 U.S.C. § 3553(a)(1), (a)(2)(A), (B), and (C); 18 U.S.C. § 3563(b)(13), (15), (16) and (17); 18 U.S.C. § 3603(2), (3), (4) and (7); USSG§ 5B1.3(b)(1)(A), (B), (C), (D) and (b)(2); USSG §5D1.3(b)(1)(A), (B), (C) and (b)(2). |
| 9) | **Defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.** | To provide for community safety and rehabilitation of defendant. 18 U.S.C. § 3553(a)(1), (a)(2)(A), (B) and (C); 18 U.S.C. § 3563(b)(18); 18 U.S.C. § 3603(2), (3), (4) and (7); USSG § 5B1.3 (b)(1)(A), (B), (C) and (D); USSG § 5D1.3 (b)(1)(A), (B) and (C). |
| 10) | **Defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the Court.** | Evidence based practice research indicates contact with criminals and potential involvement in facilitating other crimes sanctioned by law enforcement officers directly contradicts the condition of no new offenses and criminal associations, which are risk factors for recidivism. Therefore, strict monitoring by the Court/probation office is necessary for the safety of the community, defendant, and the supervising probation officer. 18 U.S.C. § 3553(a)(1), (a)(2)(A), (B) and (C); 18 U.S.C. § 3563(b)(5), (6), (15), (17) and (18); 18 U.S.C. § 3603(2), (3), (4) and (7); USSG §5B1.3(b)(1)(A), (B), (C) and (D); USSG §5D1.3(b)(1)(A), (B) and (C). |
| 11) | **As directed by the probation officer, defendant shall notify third parties of risks that may be occasioned by defendant's past involvement in the soliciting, distributing and encouraging the creation of child pornography online. The probation officer may also take steps to confirm defendant's compliance with this notification requirement or provide such notifications directly to third parties.** | To protect the public from further crimes perpetrated by defendant. 18 U.S.C. § 3553(a)(1), (b)(2)(A), (B) and (C); 18 U.S.C. § 3563(b)(3), (4), (5), (6), (13) and (16); in a case of crimes against property 18 U.S.C. § 3555; 18 U.S.C. § 3603(2), (3), (4) and (7); USSG §5B1.3(b)(1)(A), (B), (C) and (D) and (b)(2); USSG §5D1.3(b)(1)(A), (B), (C) and (b)(2). |

The following seven special conditions are also reasonably related to the

defendant's offense of conviction and are incorporated into this order as justified below.

| | SPECIAL CONDITIONS OF SUPERVISION | JUSTIFICATION |
|---|---|---|
| 1) | **Defendant shall submit his person, property, house, residence, papers, vehicle, or office to a search conducted by a U.S. probation officer at a reasonable time and in a reasonable manner, whenever the probation officer has reasonable suspicion of the defendant's unauthorized contact with underage children, child pornography, access to the internet, or the solicitation, distribution or creation of child pornography, or the violation of a condition of release; failure to submit to a search may be grounds for revocation; defendant shall warn any other residents that the premises he is occupying may be subject to searches pursuant to this condition.** | Based on defendant's instant offense and previous violation while on supervised release. |
| 2) | **Defendant shall provide the supervising U.S. probation officer advance notification of any devices associated with or falling within the general category of information technology (IT) that produce, manipulate, store, communicate or disseminate information and that he will use during his term of supervision. The probation office is authorized to install any application as necessary on any such devices owned or operated by defendant and shall randomly monitor those media for the purpose of identifying potential child pornography, evidence of soliciting or fostering child pornography or evidence of promoting, facilitating or engaging in child exploitation. Defendant shall consent to and cooperate with unannounced examinations of any technological equipment owned or used by him for this purpose, including but not limited to retrieval and copying of all data from all information technology devices and any internal or external peripherals. However, the probation office may conduct a detailed examination of any individual data file only if it reasonably suspects that the file may contain evidence of child pornography or child exploitation. Further,** | Based on defendant's instant offense and previous violation while on supervised release. The need to monitor defendant's use of information technology is tied to protection of the public and rehabilitation of defendant. |

| | | |
|---|---|---|
| | the examinations may involve removal of IT equipment for the purpose of conducting an examination only if the probation office reasonably suspects that the device contains evidence of child pornography or child exploitation. | |
| 3) | Not possess any material containing child pornography, as defined in 18 U.S.C. § 2256(8). | Based on defendant's instant offense and previous violation while on supervised release. This condition also promotes rehabilitation. |
| 4) | Not associate with any person under the age of 18 or have verbal, written, telephonic or electronic communication with any such person, except with the express permission of the minor's parent or legal guardian and the supervising U.S. probation officer.   This provision does not include persons under the age of 18, such as waiters, cashiers, ticket vendors, etc., with whom defendant must deal in order to obtain ordinary and usual commercial services | Based on defendant's instant offense and previous violation while on supervised release which indicate a need to protect the public. |
| 5) | Not work in any occupation, business or profession, or participate in any volunteer activity where he has access to children under the age of 18 without the prior approval of the supervising U.S. probation officer | Based on defendant's offense of conviction and previous violation while on supervised release which indicate a need to protect the public. |
| 6) | Comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C §16901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he resides, works, is a student, visits, or was convicted of a qualifying offense | Based on defendant's offense of conviction, to ensure compliance with the law and for protection of the public. |
| 7) | Undergo a psychosexual evaluation, which may involve use of polygraph examinations, as approved by the supervising U.S. probation officer.   Defendant shall participate in an outpatient sex offender counseling program if recommended by the evaluator, which may | Based on defendant's instant offense and the lack of any treatment records including risk assessments.   Polygraphs are used as a component of treatment assist in monitoring defendant to ensure public safety. Treatment is recommended to further the sentencing goal of |

| | |
|---|---|
| **involve the continued use of polygraph examinations, as approved by the supervising U.S. probation officer. Defendant's answers to questions by the treatment provider, probation officer and polygraph examiner shall be truthful in all respects unless a fully truthful statement would tend to incriminate defendant, in violation of defendant's constitutional rights, in which case defendant has the right to remain silent. Defendant shall follow all restrictions and treatment requirements of the program. If defendant is eligible for funding from any source to cover the cost of treatment, defendant is to make reasonable efforts to obtain such funding. Participation in treatment does not require payment by defendant unless it is clear defendant can afford it. Defendant shall allow reciprocal release of information between the supervising U.S. probation officer and the treatment provider.** | rehabilitation. |

2. All previous conditions imposed in the Central District of California at the time of the original sentencing are no longer in effect and the defendant is to comply with the above-ordered conditions of supervision.

3. The defendant shall promptly meet with his Probation Officer to review and discuss these conditions, as well as sign this supervised release order where indicated below.

Entered this 23rd day of February, 2016.

BY THE COURT:

WILLIAM M. CONLEY
District Judge

## ACKNOWLEDGMENT OF CONDITIONS

I have read or have had read to me the conditions of supervised release set forth in this order, and I fully understand them. I have been provided a copy of them.   I understand that upon finding a violation of probation or supervised release, the Court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.


_____       _____
Defendant                             Date


_____       _____
U.S. Probation Officer                Date